1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| PETER PARRINO | |
| Plaintiff, | |
| vs. | Case No.: |
| AMERITAS INVESTMENT COMPANY, LLC, | **COMPLAINT** |
| and | **DEMAND FOR JURY TRIAL** |
| LPL FINANCIAL LLC | |
| Defendants. | |

NOW COMES the Plaintiff, Peter Parrino ("Mr. Parrino"), by and through his attorneys, Israels & Neuman PLC and Halling & Cayo, S.C., and for his Complaint against the Defendants, Ameritas Investment Company, LLC ("Ameritas Investment"), and LPL Financial LLC ("LPL Financial"), states as follows:

**JURISDICATION AND VENUE**

1.      The District Court had jurisdiction as a civil action arising under the laws of the United States pursuant to 28 U.S.C. § 1332 (Diversity of Citizenship).

2.      Plaintiff, Peter Parrino is an adult resident of the State of Washington, whose home address is located within the Western District of Washington.

1

COMPLAINT

HALLING & CAYO, S.C.
320 E. Buffalo St., STE 700
Milwaukee, WI 53202

3.      Defendant Ameritas Investment is a limited liability company formed within the State of Nebraska with its principal place of business located at 5900 O Street, Lincoln, NE 68510. Upon information and belief, none of the members of the limited liability company are residents of the State of Washington.

4.      Defendant LPL Financial is a limited liability company organized in the State of California with its principal place of business located at 4707 Executive Drive, San Diego, CA 92121. Upon information and belief, none of the members of the limited liability company are residents of the State of Washington.

5.      The amount in controversy exceeds $75,000.

## PARTIES

6.      The Plaintiff, Peter Parrino, is an adult resident of the State of Washington residing at 511 N 48th Street, Seattle, WA 98103.

7.      Defendant, Ameritas Investment Company, LLC (CRD# 14869) is a Broker-Dealer registered and regulated by FINRA. Ameritas Investment's principal place of business is located at 5900 O Street, Lincoln, NE 68510.

8.      Defendants, LPL Financial LLC (CRD# 6413) is a Broker-Dealer registered and regulated by FINRA. LPL Financial's principal place of business is located at 1055 LPL Way, Fort Mill, SC 29715.

## FACTUAL ALLEGATIONS

9.      The Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

10.     In 2011, Mr. Parrino, a board-certified physician, started working with Mr. Ignatowski after he met Mr. Ignatowski through his accountant.

11.     At this time, Mr. Ignatowski was a registered representative with Ameritas Investment.

12.     Mr. Parrino made clear his goal was to be able to transition from practicing

2

COMPLAINT

HALLING & CAYO, S.C.
320 E. Buffalo St., STE 700
Milwaukee, WI 53202

emergency medicine in approximately 5 to 10 years.

13.    During that same year, Mr. Ignatowski recommended that Mr. Parrino purchase two Brighthouse Variable Annuity Series L annuities (Contract Nos. 3205356759 and 3205356957 – collectively referred to as the "Brighthouse Annuities") with funds from Mr. Parrino's traditional IRA account.

14.    Mr. Ignatowski represented these annuities as safe investments that were appropriate for Mr. Parrino even though these investments have been criticized by the Financial Industry Regulatory Authority ("FINRA"), the government authorized organization that oversees U.S. Broker-Dealers, for their high internal costs[1].

15.    Ameritas Investment, by and through its agent, Mr. Ignatowski repeatedly represented to Mr. Parrino that the annuities would receive a guaranteed "dollar-for-dollar" return of 6% as the "floor" for investment returns, which Mr. Parrino could withdraw from the annuity at any time.

16.    Mr. Ignatowski further represented to Mr. Parrino that additional increases in returns would be governed by market performance, which would be captured by "step-ups," which were graphically demonstrated in product literature provided to Mr. Parrino, which guaranteed investment returns while capturing market gains.

17.    Pursuant to Ameritas Investments' agent's recommendation, Mr. Parrino's entire retirement savings were rolled from a traditional IRA brokerage account with Charles Schwab into a traditional IRA at Ameritas Investment. These funds were used to purchase the Brighthouse Annuities.

18.    In 2014, Brighthouse stopped accepting contributions to the Series L annuities. Mr. Ignatowski, now registered with LPL Financial, recommended that Mr. Parrino invest in Series L

---

[1]    https://www.finra.org/media-center/news-releases/2016/finra-fines-eight-firms-total-62-million-supervisory-failures-related#:~:text=WASHINGTON%20E2%80%94%20The%20Financial%20Industry%20Regulatory%20Authority%20%28FINRA%29,failing%20to%20supervise%20sales%20of%20variable%20annuities%20%28VAs%29.

COMPLAINT

HALLING & CAYO, S.C.
320 E. Buffalo St., STE 700
Milwaukee, WI 53202

Variable Annuities from Equitable Financial Life Insurance Company (Contract Nos. 314024087 and 314066295) within Mr. Parrino's IRA.

19.     Mr. Parrino accepted Mr. Ignatowski's recommendations and purchased the Equitable Annuities.

20.     At this point, the majority of Mr. Parrino's retirement savings consisted of four annuity contracts.

21.     LPL Financial, by and through its agent, Mr. Ignatowski, reassured Mr. Parrino that the new Equitable Annuities were appropriate investments and that they were consistent with his investment and retirement goals.

22.     However, in reality, the Brighthouse Annuities Mr. Parrino was sold by Ameritas Investments were illiquid, had high internal fees, and included riders that were expensive, illusory, conflicting, and carried deceptive fee structures.

23.     Mr. Parrino specifically consulted with Mr. Ignatowski on whether he could use the guaranteed income from the annuities to retire more quickly. Mr. Ignatowski assured Mr. Parrino that if he were to dutifully fund his annuities, he would be able to withdraw up to 6% of the GMIB for the rest of his life from the Brighthouse Annuities. If he withdrew less, the GMIB would increase, and future withdrawals would also increase.

24.     For example, the Guaranteed Minimum Income Benefit rider in the Brighthouse Annuities required Mr. Parrino to annuitize to receive the guaranteed income benefit, which would require forfeiting the principal and the life insurance benefit to receive a guaranteed lifetime income stream. This was a fact that Mr. Ignatowski misrepresented to Mr. Parrino; the guaranteed 6% return only applied to the non-cash component used to calculate the ultimate income stream after owning the policy for 10 years.

25.     Mr. Ignatowsi represented to Mr. Parrino that annuitization would "never happen" as long as Mr. Parrino kept annual withdrawals from the annuity at no more than 6%. In reality, if

COMPLAINT

HALLING & CAYO, S.C.
320 E. Buffalo St., STE 700
Milwaukee, WI 53202

Mr. Parrino were to take 6% payments from the annuity starting today, Mr. Parrino would only be able to take payments for 6 to 7 years. At this point, annuitization would be forced, which would reduce the payments Mr. Parrino would receive by 38% annually thereafter.

26.    Lastly, the riders in the Brighthouse Annuities that Mr. Ignatowski sold to Mr. Parrino had investment restrictions for the sub-accounts. The restricted selections prevented Mr. Parrino from investing in a diversified portfolio to achieve reasonable growth, which was the reason significant "step-ups" in the rate of return were not achieved even in 10 years of stellar stock market performance.

27.    LPL Financial, by and through its agent, Mr. Ignatowski, also misrepresented how the Equitable Annuities would function as a means of producing guaranteed retirement returns.

28.    Mr. Ignatowski represented to Mr. Parrino that the annuities promised a guaranteed, no-risk, "dollar-for-dollar" minimum 4% return with the potential for greater returns when the market was performing well.

29.    Again, the restrictions within the annuity contracts on the sub-accounts that could be selected once again prevented significant principal growth. Compounding the problem, Mr. Ignatowski again sold Mr. Parrino conflicting, expensive, and useless riders that destroyed any chance of the annuities making money over time.

30.    Mr. Parrino was not only misled about the annuities and their performance, but the sub-accounts selected for Mr. Parrino's policy were also burdened with an excessive fixed income load. The gains in the sub-accounts barely covered the cost of insurance from their inception. Despite this, Defendants continued to recommend that Mr. Parrino invest in these unsuitable sub-accounts, which were destined to fail to deliver as promised.

31.    Further, over the course of funding the annuities, Mr. Parrino was forced to pay more than $395,000 in fees on the products sold to him by Defendants.

32.    Mr. Parrino, following Mr. Ignatowski's recommendations, dutifully paid over $1.4

COMPLAINT

HALLING & CAYO, S.C.
320 E. Buffalo St., STE 700
Milwaukee, WI 53202

million into these annuity contracts as follows:

| Contract Number | Original Issue Date | Total Purchase Payments Since Issue |
|---|---|---|
| Brighthouse - 6957 | 10/4/2011 | $305,472.47 |
| Brighthouse - 6759 | 9/30/2011 | $555,882.08 |
| Equitable - 295 | 10/30/2014 | $188,082.80 |
| Equitable - 087 | 4/25/2014 | $382,702.00 |
| | **TOTALS** | **$1,433,939.35** |

33.     In 2021, at the age of 55, after meeting the grueling demands of practicing emergency medicine for over 25 years, including diligently working with his group through three peaks of the COVID-19 pandemic, Mr. Parrino became determined to put the retirement plan that he was sold by the Defendants into action.

34.     Mr. Parrino initially lived off the funds he had available outside of his retirement investments, but in 2023, two years after Mr. Parrino left his emergency medicine position, he investigated the process for withdrawing from his annuities to cover his expenses.

35.     When Mr. Parrino inquired about withdrawing from his annuities, he was informed by both insurance companies that the contracts did not function as claimed by Mr. Ignatowski, Ameritas Investment, and LPL Financial. After several telephone conversations with both Brighthouse and Equitable, Mr. Ignatowski's staff, and Mr. Ignatowski, it became clear that the investments Mr. Parrino had been sold were not as represented by Mr. Ignatowski.

36.     As a result, Mr. Parrino first came to realize in 2023 that he was not going to be able to draw down funds from the annuity contracts to meet his retirement needs, that many of the representations made by Mr. Ignatowski were false, and that the annuities were not appropriate for him or his stated retirement goals.

COMPLAINT

HALLING & CAYO, S.C.
320 E. Buffalo St., STE 700
Milwaukee, WI 53202

37.     The devastating truth is that Mr. Parrino has lost 10 years of investment growth due to the improper recommendations, and misrepresentations made by the Defendants. As a result, Mr. Parrino is now unable to recover opportunities that would be available if Mr. Ignatowski had made suitable recommendations to Mr. Parrino or truthfully described the investments he was recommending.

38.     Mr. Parrino would have been much better off if he had been sold a simple, non-alternative, legacy mutual fund by Mr. Ignatowski instead of a portfolio of high commission annuities. Indeed, rather than growing his retirement account over this period, Mr. Parrino *lost* money.

39.     The surrender value of the annuity policies was $1,384,145.55 as of May 2023, indicating a loss in value in the annuity contracts during a time period where the S&P 500 has gained 225%.

40.     Mr. Parrino is a retail investor who suffered significant losses due to the investment recommendations made by Ameritas Investment and LPL Financial through their associated person and/or registered representative, Mr. Ignatowski.

41.     Without being fully informed about the intricacies of variable annuities, Mr. Ignatowski assured Mr. Parrino that these annuities were a "good," "high-return," and "guaranteed return" investment that aligned with his stated investment objectives and retirement strategy. Mr. Ignatowski directly misrepresented or failed to disclose material facts about the annuity contracts to Mr. Parrino, including: the high internal insurance and rider fees, investment restrictions on selecting sub-accounts, and the risks associated with mediocre or negative performance.

42.     As a result of the actions of Ameritas Investment and LPL Financial, Mr. Parrino experienced substantial financial losses.

**Liability of Ameritas Investment and LPL Financial**

**for Actions of their Associated Persons**

COMPLAINT

HALLING & CAYO, S.C.
320 E. Buffalo St., STE 700
Milwaukee, WI 53202

43.     The Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

44.     Nick Ignatowski served as an associated person (also known as a registered representative) with Ameritas Investment from 2003 through 2013 and with LPL Financial from 2013 through to the present date. His CRD number is 2409399.

45.     As an associated person with Ameritas Investment and LPL Financial, Mr. Ignatowski's duties included recommending and selling securities to investors, such as Mr. Parrino.

46.     At all times relevant to this Statement of Claims, Mr. Ignatowski was acting within the scope of his employment and/or agency for Ameritas Investment and LPL Financial and was acting in the furtherance of Ameritas Investment and LPL Financial's goals.

47.     Pursuant to the doctrine of respondeat superior, the Defendants, Ameritas Investment and LPL Financial, are responsible for the conduct of their associated persons and registered representatives, employees, and agents acting within the scope of their employment/agency and in furtherance of the goals of Ameritas Investment and LPL Financial.

48.     Further, pursuant to the doctrine of apparent authority, Ameritas Investment and LPL Financial are responsible for the conduct of its associated persons and registered representatives, employees, and agents, whom they authorize to conduct business on their behalf including recommending and selling securities.

49.     Therefore, Ameritas Investment and LPL Financial are liable to Mr. Parrino for the conduct of their associated persons and registered representatives, agents, and employees, including Mr. Ignatowski.

### First Cause of Action: Breach of Fiduciary Duty

50.     The Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

51.     Breach of fiduciary duty is merely negligence of a professional. *Waddoups v. Nationwide Life Ins. Co.*, 2016 Wash. App. LEXIS 508, at *58 (2016).

COMPLAINT

HALLING & CAYO, S.C.
320 E. Buffalo St., STE 700
Milwaukee, WI 53202

52.    The cause of action is sounded in tort and duties imposed by reason of a special relationship rather than in contract. *Hudson v. Condon*, 101 Wn. App. 866, 873, 6 P.3d 615 (2000); *GW Constr. Corp. v. Professional Serv. Indus., Inc.*, 70 Wn. App. 360, 364, 853 P.2d 484 (1993).

53.    The plaintiff must prove the following elements:  (1) existence of a duty owed, (2) breach of that duty, (3) resulting injury, and (4) causation between the breach and injury. *Miller v. U.S. Bank of Wash.*, 72 Wn. App. 416, 426, 865 P.2d 536 (1994); *Am. Commerce Ins. Co. v. Ensley*, 153 Wn. App. 31, 42, 220 P.3d 215 (2009).

54.    Because of the special relationship, the fiduciary holds higher duties beyond ordinary negligence, which duties include acting in the best interest of the client and avoiding conflicts of interest. *Trask v. Butler*, 123 Wn.2d 835, 843, 872 P.2d 1080 (1994); *In re Estate of Larson*, 103 Wn.2d 517, 520, 694 P.2d 1051 (1985); *In re Marriage of Petrie*, 105 Wn. App. 268, 276, 19 P.3d 443 (2001).

55.    In a fiduciary relationship, one party occupies such a relation to the other party as to justify the latter in expecting that his interests will be served. *Liebergesell v. Evans*, 93 Wn.2d 881, 889-90, 613 P.2d 1170 (1980); *Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*, 110 Wn. App. 412, 433, 40 P.3d 1206 (2002).

56.    A fiduciary relationship arises as a matter of law in certain contexts such as attorney and client, doctor and patient, trustee and beneficiary, principal and agent, and partner and partner; financial planners owe a fiduciary duty to their customers. *McGraw v. Wachovia Sec., LLC*, 756 F. Supp. 2d 1053, 1078 (N.D. Iowa 2010); *Johnston v. CIGNA Corp.*, 916 P.2d 643, 647 (Colo. App. 1996).

57.    Mr. Ignatowski owed a fiduciary duty to Mr. Parrino in connection with the recommendation to sell the annuities to Mr. Parrino as well as in connection with any continued representations that were made to Mr. Parrino in relation to the annuities.

58.    Ameritas Investment and LPL Financial had a duty to supervise its agents to ensure

COMPLAINT

HALLING & CAYO, S.C.
320 E. Buffalo St., STE 700
Milwaukee, WI 53202

that its registered representatives were only recommending suitable investments to investors, like Mr. Parrino. This required Ameritas Investment and LPL Financial to properly supervise its agents, to conduct appropriate due diligence on the Brighthouse and Equitable Annuities prior to selling the annuities to investors, and providing training for their associated persons and registered representatives who recommended and sold the annuities to the public, like Mr. Ignatowski.

59.     Given the entirely unsuitable nature of the initial recommendations to purchase the annuities, the ongoing advice regarding continuing to make payments into the annuities, and the unsuitable sub-account allocation, Ameritas Investment and LPL Financial failed to properly supervise Mr. Ignatowski in connection with the annuities that were sold to Mr. Parrino.

60.     Further, despite being aware that the investments had failed to meet Mr. Parrino's needs, Mr. Ignatowski continued to make unsuitable recommendations. He urged Mr. Parrino to keep the annuity contracts, even though the sub-accounts were underperforming and not meeting the cost of insurance.

61.     Throughout the entire time that Mr. Parrino held the annuities, Mr. Ignatowski never suggested surrendering or transitioning to a more suitable alternative. Instead, he continued to recommend holding onto the investments and following the same flawed strategy in the sub-accounts. Mr. Parrino was sold illiquid investments as an alternative to traditional growth investments, such as mutual funds, without anyone investigating whether they were suitable for him.

62.     Further, Mr. Ignatowski did not recommend that Mr. Parrino invest in a broad, diversified investment portfolio that focused on reasonable growth supplemented with lower cost term life insurance. Instead, Mr. Ignatowski continued to recommend holding the annuity products, which prevented Mr. Parrino from participating in the stock market, which would have been suitable, in Mr. Parrino's best interest, and would have actually met his retirement goals.

63.     By failing to implement supervisory procedures and systems designed to ensure

10

COMPLAINT

HALLING & CAYO, S.C.
320 E. Buffalo St., STE 700
Milwaukee, WI 53202

that suitable investments were recommended and sold by their associated persons and/or registered representatives, or that its agents' ongoing advice was suitable, Ameritas Investment and LPL Financial breached their supervisory duties to Mr. Parrino.

64.     Ameritas Investment and LPL Financial also failed to educate and train their registered representatives and those who supervised them. Specifically, Ameritas Investment and LPL Financial failed to implement adequate supervisory procedures and systems to ensure compliance with industry standards of care set forth in NASD Rules of Fair Practice or federal and state securities laws.

65.     Mr. Ignatowski clearly did not understand the narrow band of candidates who would have been suitable investors for the Brighthouse and Equitable Annuities. Mr. Parrino was not a suitable investor for these products.

66.     Ameritas Investment and LPL Financial breached the fiduciary duty that was owed to Mr. Parrino in many ways, including, but not necessarily limited to: (1) failing to perform customer-specific suitability analysis to determine whether the Brighthouse and Equitable Annuities were suitable for Mr. Parrino, (2) failing to provide appropriate training to their associated persons and/or registered representatives, including Mr. Ignatowski, who recommended and sold the Brighthouse and Equitable Annuities to Mr. Parrino, (3) providing ongoing advice to Mr. Parrino that was not consistent with his investment objectives and risk tolerance, and (4) misrepresenting the nature of the investments and the returns that were expected were "guaranteed."

67.     These breaches by Ameritas Investment and LPL Financial were the proximate and actual cause of harm to Mr. Parrino in an amount to be determined at trial.

**Second Cause of Action: Negligence**

68.     The Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

69.     Ameritas Investment and LPL Financial and their associated persons each owed a

COMPLAINT

HALLING & CAYO, S.C.
320 E. Buffalo St., STE 700
Milwaukee, WI 53202

duty of care to their account holders, including Mr. Parrino. Those duties included only making suitable recommendations of securities to Mr. Parrino as well as making suitable ongoing recommendations regarding the investments and the annuity sub-accounts.

70.     Deferred variable annuities are hybrid investments containing securities and insurance features. Their sales are regulated both by FINRA and the Securities and Exchange Commission (SEC). These annuities offer investors choices among a number of complex contract features and options. Due to the complexity and confusion surrounding them, which can lead to questionable sales practices, variable annuities are a leading source of investor complaints to FINRA.

71.     FINRA Rule 2330 establishes sales practice standards regarding recommended purchases and exchanges of deferred variable annuities. Among the rule's key requirements, a registered representative, when recommending a deferred variable annuity transaction, must reasonably believe the customer has been informed of the various features of this type of annuity, such as a surrender charge, potential tax penalties, various fees and costs, and market risk. A registered representative must have a reasonable basis to believe the customer would benefit from certain features of deferred variable annuities, such as tax-deferral, annuitization, or a death or living benefit.

72.     A reasonably prudent investment advisor in Mr. Ignatowski's would have sold Mr. Parrino a broad and diversified portfolio of liquid investments.

73.     Ameritas Investment and LPL Financial breached their duty of care to Mr. Parrino by failing to: (1) perform customer-specific suitability analysis to determine whether the Brighthouse and Equitable Annuities were suitable for Mr. Parrino, and (2) provide appropriate training to their associated persons and/or registered representatives, including Mr. Ignatowski, who recommended and sold the Brighthouse and Equitable Annuities to Mr. Parrino, (3) provide ongoing advice to Mr. Parrino that was not consistent with his investment objectives and risk

COMPLAINT

HALLING & CAYO, S.C.
320 E. Buffalo St., STE 700
Milwaukee, WI 53202

tolerance, and (4) misrepresent the nature of the investments and the returns that were expected were "guaranteed."

74.     Ameritas Investment and LPL Financial, by and through its agent, Mr. Ignatowski, failed to act as a reasonably prudent investment advisor would act under similar circumstances, resulting in a breach of the duty that was owed to Mr. Parrino.

75.     Due to Ameritas Investment and LPL Financial breaching its duties, Mr. Parrino was sold unsuitable investments and was given ongoing unsuitable advice regarding the continued premium payments and allocation for the sub-accounts that the annuities were invested in.

76.     Absent Ameritas Investment and LPL Financial's acts and omissions, Mr. Parrino would not have been sold the unsuitable investments and would not have continued to effectively pour money down the drain all the way into 2023.

77.     As a result, Mr. Parrino was damaged in an amount to be determined at trial, including attorneys' fees.

### Third Cause of Action: Negligence: Failure to Supervise

78.     The Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

79.     "The theory of negligent supervision creates a limited duty to control an employee for the protection of third parties, even where the employee is acting outside the scope of employment." *Niece v. Elmview Grp. Home*, 131 Wn.2d 39, 51, 929 P.2d 420 (1997).

80.     To establish a claim for negligent supervision, the Plaintiff must show:  (1) the agent [Mr. Ignatowski] acted outside the scope of his employment with the Broker [Ameritas Investment and LPL Financial], (2) he presented a risk of harm, (3) the Broker [Ameritas Investment and LPL Financial] knew, or should have known in the exercise of reasonable care, that Mr. Ignatowski posed a risk to others, and (4) the Broker's [Ameritas Investment and LPL Financial] failure to supervise was a proximate cause of the loss. *LaPlant v. Snohomish County*, 162 Wn. App. 476, 479 n.7, 271 P.3d 254 (2011).

COMPLAINT

HALLING & CAYO, S.C.
320 E. Buffalo St., STE 700
Milwaukee, WI 53202

81.     NASD [which is now FINRA] is a self-regulatory organization registered with the SEC. The Exchange Act authorizes the NASD "to develop and enforce rules of professional conduct for its member firms, subject to oversight by the SEC." *Gurfel v. Sec. & Exch. Comm'n*, 340 U.S. App. D.C. 292, 205 F.3d 400, 400 (2000).

82.     "[A] person cannot lawfully engage in the securities business unless he or she is either registered with the NASD as a broker-dealer or as a person associated with a broker-dealer." *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1573 (9th Cir. 1990).

83.     As a condition of the right to engage in the securities business, broker-dealers and registered representatives must abide by NASD rules and regulations. *As You Sow v. AIG Fin. Advisors, Inc.*, 584 F. Supp. 2d 1034, 1048 (M.D. Tenn. 2008). While NASD [now FINRA] rules do not create a private cause of action, courts have looked to the Rules to define the scope of a common law duty such as negligent supervision. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 493 (6th Cir. 1990).

84.     FINRA Rule 3110(a) sets a standard of care for the industry which requires each FINRA member to "establish and maintain a system to supervise the activities of each associated person that is reasonably designed to achieve compliance with applicable securities laws and regulations, and with applicable NASD and FINRA rules."

85.     FINRA Rule 3110(a) requires all brokerage firms to supervise their associated persons' compliance with all NASD rules.

86.     Ameritas Investment and LPL Financial were under the duty to supervise the sale of all securities by their associated persons and registered representatives, including Mr. Ignatowski.

87.     FINRA Rule 2330 requires a registered principal to review and determine whether to approve a customer's application for a deferred variable annuity before sending the application to the issuing insurance company. A principal can approve the transaction only if it is suitable

COMPLAINT

HALLING & CAYO, S.C.
320 E. Buffalo St., STE 700
Milwaukee, WI 53202

based on the factors that a registered representative must consider when making a recommendation.

88.     FINRA Rule 2330 requires firms to establish and maintain written supervisory procedures reasonably designed to comply with the rule's standards. Firms must implement policies and procedures and training programs for registered representatives who sell deferred variable annuities and for registered principals who review these transactions.

89.     Ameritas Investment and LPL Financial breached the duty it owed to Mr. Parrino by, among other things: (1) failing to either develop adequate procedures to ensure the suitability of sales of investments, or to implement, follow, and enforce their own guidelines regarding the suitability of sales of securities; (2) failing to ensure and have systems in place to ensure that the investments sold to Mr. Parrino were suitable; (3) negligently training their associated persons and/or registered representatives, including Mr. Ignatowski, about the investments he was selling, as required by FINRA, to meet their reasonable-basis suitability obligations; (4) negligently permitting its registered representative to continue to give ongoing unsuitable investment advice regarding ongoing payments into the annuity contracts and management of the sub-accounts; and (5) negligently supervising Mr. Ignatowski's sales of unsuitable investments and ongoing unsuitable recommendations to Mr. Parrino regarding payments into the annuity contracts and sub-account allocation.

90.     Ameritas Investment and LPL Finacial's acts and omissions injured Mr. Parrino. Indeed, but for Ameritas Investment and LPL Finacial's omissions and inaction, Mr. Parrino would not have been sold unsuitable investments or continued to pour money into the annuity contracts.

91.     Accordingly, Ameritas Investment and LPL Financial are liable for damages in an amount to be proved at trial.

**Fourth Cause of Action:  Fraud**

92.     The Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

15

COMPLAINT

HALLING & CAYO, S.C.
320 E. Buffalo St., STE 700
Milwaukee, WI 53202

93.     In order to prove fraud, a party is required to establish the following nine elements: (1) representation of an existing fact, (2) materiality, (3) falsity, (4) the speaker's knowledge of its falsity, (5) intent of the speaker that it should be acted upon by the plaintiff, (6) plaintiff's ignorance of its falsity, (7) plaintiff's reliance on the truth of the representation, (8) plaintiff's right to rely upon it, and (9) damages suffered by the plaintiff. *Bruns v. Phx. Investigations*, No. 46755-7-I, 2002 Wash. App. LEXIS 1855, at *7 (Ct. App. Aug. 5, 2002).

94.     Mr. Ignatowski misrepresented the nature of the annuity investments and the returns that were expected and "guaranteed."

95.     Ameritas Investment and LPL Financial, by and through their agent, Mr. Ignatowski, omitted, or outright misstated, numerous material facts in the solicitation and sale of the investments that were sold to Mr. Parrino.

96.     Ameritas Investment and LPL Financial and its agents knew that the representations made were not true (and that material omissions had been made), made the representations (and omitted material facts) with reckless disregard as to whether they were true, or negligently made the misrepresentation(s).

97.     Ameritas Investment and LPL Financial necessarily ought to have known the truth or untruth of the representations made and its agents had the duty to make a reasonable and diligent investigation of the representations that were made to Mr. Parrino both orally and in writing to ensure that statements were true and that there were not omissions of material fact in order to make the statement made regarding the investments not misleading.

98.     Ameritas Investment and LPL Financial and its agents made the misrepresentations and omissions of material facts with the intent to deceive Mr. Parrino.

99.     Mr. Parrino was unaware that the misrepresentations were not true, believed the representations to be true, and relied on those representations to his detriment.

100.     As a direct and proximate result of the conduct of Defendants and its agents, Mr.

COMPLAINT

HALLING & CAYO, S.C.
320 E. Buffalo St., STE 700
Milwaukee, WI 53202

Parrino sustained damages in an amount to be determined at trial, including punitive damages.

**Fifth Cause of Action:  Negligent Misrepresentation**

101.    The Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

102.    The elements of negligent misrepresentation are:  (1) a false statement, (2) made to induce a business transaction, (3) upon which the other party justifiably relies. *Controlled Atmosphere, Inc. v. Branom Instrument Co.*, 50 Wn. App. 343, 350-51, 748 P.2d 686 (1988). The negligent omission of a material fact is sufficient to satisfy the first element of negligent misrepresentation. *Amtruck Factors v. Int'l Forest Prods.*, 59 Wn. App. 8, 18, 795 P.2d 742, 748 (1990).

103.    Mr. Ignatowski misrepresented the nature of the annuity investments and the returns that were expected and/or "guaranteed."

104.    Ameritas Investment and LPL Financial, by and through their agent, Mr. Ignatowski, omitted, or outright misstated, numerous material facts in the solicitation and sale of the investments that were sold to Mr. Parrino.

105.    Mr. Parrino was unaware that the misrepresentations were not true, believed the representations to be true, and relied on those representations to his detriment.

106.    As a direct and proximate result of the conduct of Defendants and its agents, Mr. Parrino sustained damages in an amount to be determined at trial, including punitive damages.

WHEREFORE, the Plaintiffs request that the following relief:

1)  Ameritas Investment and LPL Financial pay Mr. Parrino for their losses suffered as a result of the sales of unsuitable investments, in an amount to be determined at hearing; and

2)  Ameritas Investment and LPL Financial pay Mr. Parrino well-managed damages, for the benefit of the bargain that was sold to him, and/or punitive damages, as well as expert fees, and forum fees as a result of Ameritas Investment and LPL Financials' egregious conduct.

17

COMPLAINT

HALLING & CAYO, S.C.
320 E. Buffalo St., STE 700
Milwaukee, WI 53202

1

2                          DEMAND FOR JURY TRIAL

3            Plaintiff demands a trial by jury on all claims so triable.

4
        Date: June 8, 2023
5
                                         Attorneys for Plaintiff
6
                                         s/ David P. Neuman
7                                        David P. Neuman
                                         WA State Bar No. 48176
8                                        dave@israelsneuman.com

9
                                         ISRAELS & NEUMAN PLC
10                                       506 Second Avenue
                                         Seattle, WA 98104
11                                       WA License No. 48176
                                         (206) 795-5798
12

13                                       SEAN M. SWEENEY
                                         WI State Bar No. 1063452
14                                       sms@hallingcayo.com
                                         *Pro Hac Vice* Pending
15

16                                       HALLING & CAYO, S.C.
                                         320 E. Buffalo Street, Suite 700
17                                       Milwaukee, WI 53202
                                         (414) 271-3400
18

19

20

21

22

23

24

25

26

27
                                      18
28

COMPLAINT                                              HALLING & CAYO, S.C.
                                                       320 E. Buffalo St., STE 700
                                                       Milwaukee, WI 53202